**SIGNED this 25th day of July, 2008.**

_Craig A. Gargotta_

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JEFFREY CLARK DOUGLASS, | § | CASE NO. 04-12499-CAG |
| | § | |
| Debtor. | § | Chapter 13 |

-------------------------------------------------------------------------- --------------------------

| | | |
|---|---|---|
| DIANA BLEDSOE DOUGLASS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADV. NO. 08-1007 |
| | § | |
| DEBORAH LANGEHENNIG, Chapter 13 | § | |
| Trustee, JEFFREY CLARK DOUGLASS, | § | |
| and CHASE MANHATTAN MORTGAGE | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION IN SUPPORT
### OF ORDER GRANTING IN PART AND DENYING IN PART
### MOTION OF DEFENDANT TRUSTEE TO DISMISS

On April 2, 2008, came on to be heard the Motion to Dismiss this adversary proceeding, filed

on behalf of Defendant Deborah Langehennig, the Chapter 13 Trustee (the "Trustee") appointed in

the above-styled and numbered bankruptcy case of Defendant Jeffrey Clark Douglass (the "Debtor"). The Trustee, the Debtor, Defendant Chase Manhattan Mortgage Corporation ("Chase"), and the Plaintiff Diana Bledsoe Douglass ("Plaintiff") each appeared through counsel. After hearing the arguments of counsel, the Court took the matter under advisement. Having now carefully considered those arguments and the applicable law, the Court finds that the Motion should be granted in part and denied in part, for the reasons stated below.

## THE APPLICABLE LEGAL STANDARD

The Fifth Circuit has stated the standard as:

> When considering a motion to dismiss for failure to state a claim, the [trial] court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. . . . However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

Further, "[t]he determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim." *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). Moreover, "[a] motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *see also Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir.2004) (same).

In considering such a motion, generally the "court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (A court may consider a document attached to the motion to dismiss, if it is referred to in the complaint and is central to the plaintiff's claim.). However, "courts must consider the complaint in its entirety, as well as other sources [–] in particular, documents incorporated into the complaint

by reference, and matters of which a court may take judicial notice." ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*** 127 S.Ct. 2499, 2509 (2007).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . .." ***Bell Atl. Corp. v. Twombly,*** 127 S. Ct. 1955, 1964 (2007) (citing ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)).  In ***Bell Atlantic***, the Supreme Court recently restated the pleading standard, requiring in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." ***Bell Atl.,*** 127 S. Ct. at 1974.

The Trustee correctly points out that in ***Bell Atlantic,*** the Supreme Court rejected its longstanding articulation in ***Conley v. Gibson*** of the applicable standard under Rule 12(b)(6) that "[d]ismissal is warranted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ***Conley***, 355 U.S. at 45-46.  The Trustee argues that Plaintiff's Complaint fails to meet the standard required by ***Bell Atlantic*** that "to survive a motion to dismiss, a plaintiff's allegations must set forth 'more than labels and conclusion, and a formulaic recitation of the elements of the cause of action.'" Trustee's Motion to Dismiss at ¶ 2, quoting ***Bell Atl.,*** 127 S. Ct. at 1965.

Specifically, the Trustee argues that for the Plaintiff to meet the standard articulated in ***Bell Atlantic*** and show she is "entitled to relief" under Rule 8, she must plead "[f]actual allegations [that are] enough to raise a right to relief above the speculative level" and that "'the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action' on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .." ***Bell Atl.,*** 127 S. Ct. at 1964-65 (citations and footnote omitted).

Since the ***Bell Atlantic*** decision, courts have struggled with how to apply the decision's more rigorous "plausibility" standard in place of the previous "no set of facts" standard articulated in ***Conley***. *See generally* Allan Ides, "***Bell Atlantic** and the Principle of Substantive Sufficiency Under Federal Rule of Civil Procedure 8(a)(2): Toward a Structured Approach to Federal Pleading Practice*," 243 F.R.D. 604 (2006) (hereinafter "Structured Approach"). Some commentators and courts have questioned whether the Supreme Court in ***Bell Atlantic*** intended its ruling to apply to any cause of action alleged or be limited to the particular cause of action (perhaps even the particular element of that cause of action) that it addressed in the case before it. *Structured Approach* at 31 ("the 'better' reading of ***Bell Atlantic*** is that it did not change the law of pleading, but that it simply applied long-accepted pleading standards to a unique body of law under which the plaintiffs' complaint failed to include any facts or plausible inferences supportive of a material element of the claim specifically asserted by the plaintiffs."); ***Iqbal v. Hasty***, 490 F.3d 143, 156 (2d Cir. 2007) ("some of the Court's linguistic signals point away from a heightened pleading standard and suggest that whatever the Court is requiring in ***Bell Atlantic*** might be limited to, or at least applied most rigorously in, the context of either all section 1 allegations or perhaps only those section 1 allegations relying on competitors' parallel conduct."). The confusion on how the new standard applies has arisen because the particular issue addressed by the Supreme Court in ***Bell Atlantic***–whether a complaint was sufficient to allege an agreement under § 1 of the Sherman Act–is one where the established substantive law does not permit any inference of an agreement from facts that show only parallel conduct and nothing more. Structured Approach at 26-27. In other words, even when the facts alleged are viewed, as they must be when deciding a Rule 12(b)(6) motion, in the light most favorable to the pleader and with all reasonable inferences decided in the pleader's favor, the courts cannot infer a § 1 agreement from facts that show only parallel conduct. ***Bell Atl.***, 127 S. Ct. at 1966 ("A statement of parallel conduct, even conduct consciously undertaken, needs

some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.").

Most courts have not so limited *Bell Atlantic*, but have applied it to a broad range of causes of action. *See e.g., Iqbal*, 490 F.3d at 157-58 (finding that the Supreme Court "is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible," and applying that standard to a civil rights action); *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773 (7th Cir. 2007) (interpreting *Bell Atlantic* as imposing new fact-based pleading requirement and applying it to a Title VII retaliation action); *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (applying *Bell Atlantic*, also in a civil rights action).

While the Fifth Circuit Court of Appeals has not expressly addressed the scope of *Bell Atlantic* in any detail, it has not limited its application either. *See, e.g., Elsensohn v. St. Tamany Parish Sheriff's Office*, 2008 WL 2315667 (5th Cir.) (applying *Bell Atlantic* to a cause of action under the Family and Medical Leave Act); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) (applying *Bell Atlantic* to causes of action under Louisiana insurance contract law), *cert. denied sub nom. Xavier Univ. of Louisiana v. Travelers Cas. Prop. Co. of America*, 128 S.Ct. 1230 (2008) *and cert. denied sub nom. Chehardy v. Allstate Indem. Co.*, 128 S.Ct. 1231 (2008); *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383 (5th Cir. 2008) (applying *Bell Atlantic* to federal constitutional equal protection and due process claims).  In language reminiscent of *Conley,* however, the Fifth Circuit Court of Appeals recently added to the confusion when it paraphrased *Bell Atlantic* in admonishing that "[u]nder Rule 12(b)(6), a claim should not be dismissed unless

the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Clearly, the standard established under *Bell Atlantic* applies to the Plaintiff's causes of action. The Court need not today decide with precision the standard to be applied under *Bell Atlantic*. In reviewing the facts that the Plaintiff alleges, the Court will not speculate as to whether there is "no set of facts" that might support the causes of action alleged in the Complaint, but rather will consider only those facts that are expressly alleged in the Complaint or can be reasonably inferred from those facts that are plead. The contention here is the causes of action should be dismissed not because the facts alleged are insufficient to support a cause of action, but because those facts show, on their face, that the actions are barred by statutes of limitations or some other affirmative defense, or are barred as a matter of law as pre-empted by the Bankruptcy Code. *See Kansa Reins. Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994) ("[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). The Trustee does not appear to dispute, and the Court finds, that the facts alleged satisfy even the most rigorous interpretation of the standard imposed under *Bell Atlantic*.

## THE APPLICABLE FACTS

The relevant facts as alleged in the Complaint, and therefore taken as true for purposes of the Motion to Dismiss, are as follows.

The Plaintiff and the Debtor, Jeffrey Clark Douglass, were married in the year 2000. The residential property that is the subject of this suit (the "Home") was purchased on or about February 14, 2001. The Plaintiff contributed $75,000, which was her separate property, towards the purchase price, at the Debtor's insistence and based on his promise that "in the event their relationship ended, she would be placed back in the position of owning her own home again."

6

Complaint, p. 2, ¶ 7. At or about the time of the purchase, she signed a "letter" (the "Gift Letter") that either describes that contribution as a gift to the Debtor, or actually operates to gift it to him (the parties' descriptions of the Gift Letter are not entirely clear, and the Court has not been provided with a copy). She signed the Gift Letter at the Debtor's request and without knowing its contents. The Home was titled in the Debtor's name only.

The Home was contaminated with toxic fumes and the Plaintiff became ill as result, causing the family to vacate the premises sometime prior to the Debtor's filing of his bankruptcy case on May 4, 2004. Neither the Debtor nor the Plaintiff purchased any other homestead property after moving out of the Home.

The Plaintiff did not join in the Debtor's bankruptcy filing. Debtor did not list the Home as his exempt property on his schedules filed in the case. He claimed federal exemptions and listed a community property damage claim and his personal injury claim, both based on the contamination of the Home, as his exempt property.

In 2006, it was determined that the Home was safe to occupy and both the Debtor and the Plaintiff moved back. The Debtor subsequently left, however, when the two separated. They remain separated.

On November 16, 2007, the Debtor filed a motion to sell the Home, free and clear of liens, and filed a motion to compel the Plaintiff to vacate and turn it over. A hearing was held on November 27, 2007, at which Plaintiff learned for the first time of the contents of the Gift Letter and that title to the Home was in Debtor's name only. The parties ultimately reached an agreement that preserved the Plaintiff's ability to assert the causes of action made in this suit while allowing the sale to go forward. The Plaintiff is claiming an interest in the proceeds of the Home's sale.

In addition to the foregoing facts alleged in the Complaint, the Court takes judicial notice of certain relevant, undisputed facts reflected in the record of the Debtor's bankruptcy case. Specifically, the Court notes (and the parties do not dispute) the following additional facts.

The Debtor alone signed the note in connection with the purchase of the Home, but the Debtor and Plaintiff both signed the deed of trust securing that note. *See* Exhibits to Docket Entry # 48, motion for relief from automatic stay filed May 24, 2007, by Chase.

The Plaintiff was not listed on the Debtor's matrix of creditors and parties in interest filed in the case nor on his schedules. None of the relevant papers (including the Debtor's Chapter 13 plan, the Section 341 Notice that included notice of the claims bar date, confirmation hearing, and other deadlines, and the confirmation order) reflect service on the Plaintiff, except for the motions for relief from automatic stay with respect to the Home that were filed August 27, 2004, and May 24, 2007, by the mortgage holder. *See* Docket Entries # 19, # 48.

The deadline for filing claims in this case–i.e., the "bar date"–was September 7, 2004. The Plaintiff did not file a claim in the case.

On March 23, 2005, the Debtor's Amended Chapter 13 Plan (the "Plan") was confirmed. It provides for payments on the amount of the agreed, allowed mortgage claim secured by the Home,[1] by implication providing for the Debtor's retention of his interest in it. It does not treat any claim or interest of the Plaintiff in the Home, except to note the imminent litigation regarding the Debtor's and Plaintiff's claims related to the contamination of the Home.

---

[1] Specifically, the Debtor asked to value the Home at $15,410 and pay that amount, as the allowed secured claim of Chase, the mortgage company, at 7.85% ($315) per month. The balance of Chase's claim was treated as a general unsecured claim, to be paid pro rata with the other unsecured claims. Defendant Chase agreed to that treatment and to confirmation of the plan as proposed.

# LEGAL ANALYSIS AND DISCUSSION

Based on the foregoing facts, the Plaintiff alleges three causes of action:[2] (1) for a judgment declaring that at least a portion of the proceeds of the sale of the Home is her separate property; (2) for the imposition of a constructive trust on at least a portion of the proceeds of the sale of the Home; and (3) for a judgment declaring that she had a homestead interest in the Home and is therefore entitled to proceeds of its sale to the extent of the value of that interest.

## DECLARATORY JUDGMENT BASED ON HER SEPARATE PROPERTY

The Plaintiff bases her request to obtain a judgment, declaring that a portion of the proceeds of the Home are her separate property, on her claim that the Home was acquired in part or in whole with her separate funds.  In the Trustee's Motion to Dismiss, the Trustee alleges that the allegations of the Complaint fail to state this cause of action because the Complaint on its face admits that the Plaintiff signed the Gift Letter making her contribution to the Home's purchase a gift to her husband.  Any argument that she was defrauded into signing the Gift Letter, the Trustee argues, is barred by the statute of limitations on fraud and/or by the passing of the deadline for filing claims and the confirmation of the Debtor's Chapter 13 Plan.

---

[2] In the Complaint, the Plaintiff also requests the imposition of an equitable lien, apparently as an alternative remedy to the imposition of a constructive trust.  In her sur-reply to the Trustee's reply to the Plaintiff's response to the Motion to Dismiss, however, she appears to argue that the imposition of an equitable lien should be considered a basis for her interest in the Home as an alternative to directly finding it to be her separate property.

Admittedly, the Plaintiff's pleading on this issue is not altogether clear.  If, on the one hand, the Plaintiff is asserting a cause of action involving her request for an equitable lien that is separate from the other three causes of action described above, the Trustee has not challenged that cause of action as he does the other three and the Court therefore need not address it.  On the other hand, if the imposition of an equitable lien is pled as a remedy in addition to, or instead of, a declaration that the Home is her separate property as a result of her contribution to its purchase price from her separate funds, or as an alternative remedy for the Debtor's fraud or breach of fiduciary relationship, then the Court's denial of the Trustee's request to dismiss those causes of action preserves the Plaintiff's request for imposition of an equitable lien as a remedy as well.

The Trustee and the Debtor then engage in a battle of words over which presumption under Texas law regarding the community or separate property character of property should prevail when considering the allegations of the Plaintiff's Complaint. For purposes of deciding a Rule 12(b)(6) motion to dismiss, when the Court does not decide the merits of the Debtor's contentions but views them, and all reasonable inferences, in the light most favorable to the Plaintiff, those state law presumptions guide the Court as to what inferences it is permitted to draw from the facts alleged. *See Bell Atl.*, 127 S. Ct. 1955 (2007) (granting a motion to dismiss where, according to substantive antitrust law, the presumption was that mere joint collateral action was not the result of a conspiracy, and so no inference of conspiracy could be drawn from allegations that showed no more than joint collateral action). The Court's task begins with a review of the basic principles of Texas community property law and the applicable evidentiary presumptions.

The primary consideration affecting the community or separate nature of property is the intention of the spouses as shown by circumstances surrounding acquisition of the property. *E.g., Zagorski v. Zagorski*, 116 S.W.3d 309 (Tex. App.– Houston [14th Dist.] 2003, pet. denied); *Rusk v. Rusk*, 5 S.W.3d 299 (Tex. App.–Houston [14th Dist.] 1999, pet. denied); *Welder v. Welder*, 794 S.W.2d 420 (Tex. App.–Corpus Christi 1990, no writ); *Earnest v. Earnest*, 223 S.W.2d 681 (Tex. Civ. App.–Amarillo 1949, no writ). "As a general rule, property conveyed to one spouse during a marriage is presumed to be community property unless that presumption be displaced by a different or contrary presumption that would show that the property so conveyed was in fact, separate property." *Kyles v. Kyles*, 832 S.W.2d 194, 196 (Tex. App.–Beaumont 1992, no writ). For example, recitals in warranty deeds can displace the normal presumption of community property and create a new presumption that the property is a spouse's separate property. *Id.* (citing *Hodge v. Ellis*, 277 S.W.2d 900, 904 (Tex. 1955) and *Little v. Linder*, 651 S.W.2d 895, 898 (Tex. App.–Tyler 1983, writ ref'd n.r.e.)).

In addition, if property purchased after marriage is intended to belong to the separate estate of a spouse, it will not be deemed to be community property. *Kearse v. Kearse*, 262 S.W. 561 (Tex. Civ. App.–Dallas 1924), *aff'd,* 276 S.W. 690 (Tex. Comm'n App. 1925, judgm't adopted); *Potter v. Kennedy*, 41 S.W. 711 (Tex. Civ. App.–Fort Worth 1897, no writ).  Ordinarily, a conveyance by one spouse to the other of separate property will be presumed to be a gift of the property.  *Powell v. Jackson*, 320 S.W.2d 20 (Tex. Civ. App.–Amarillo 1958, writ ref'd n.r.e.).  For example, it has been held that, where a spouse furnishes money which is his or her separate property to pay for land that is purchased during the marriage and title to the land is taken in the name of both spouses, the presumption is that the spouse making the separate contribution intended the interest thus placed in the other spouse by deed to be a gift.  *Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex. 1975).

According to her allegations in the Complaint, the Plaintiff's separate property funds were transferred as part of the purchase price of the Home, which was titled solely in the name of the Debtor.  Thus the warranty deed establishes a (rebuttable) presumption that the Home was the Debtor's separate property.  In addition, the use of the Plaintiff's separate funds to buy the Home is presumed to have been a gift to the Debtor, such that the Home (at least to the extent of the amount she contributed) would be presumed to be his separate property.

However, those presumptions can be rebutted by evidence clearly establishing that the Home was not intended to be the Debtor's separate property or that Plaintiff had no intention to make a gift.  *See id.*  In this case, the Court finds that there are ample allegations in the Complaint that, if taken as true as they must be, establish at the least that the Plaintiff did not have the requisite donative intent.

The Trustee first responds that those allegations are in the nature of fraud or claims for misrepresentation and, in essence, she asserts that the Plaintiff's signature on the Gift Letter conclusively rebuts those allegations.  In addition, the Trustee contends, those allegations are barred

by the bar date for filing claims in the Debtor's case and confirmation of his Chapter 13 Plan, and by the statute of limitations applicable to fraud and misrepresentations claims under Texas law.

In this context, however, the Trustee equates the Plaintiff's reliance on her alleged agreement with the Debtor regarding the use of her funds and the purchase of the Home and her explanation of the Gift Letter and other circumstances surrounding the purchase, to a separate cause of action against the Debtor (and his estate). Rather, as pleaded in the context of this cause of action, those facts pertain to Plaintiff's alleged lack of donative intent, one of the "elements" she must establish to prove that the Home is, at least in part, her separate property. *See Phillips v. Vitemb*, 235 F.2d 11, 14 (5th Cir. 1956) ("The presumption is rebuttable but, 'It will be borne in mind that the presumption of the community character of property acquired by the spouse during marriage is very strong, and can be overcome only by clear and convincing proof that it belongs to one or the other of them, and that the burden of proving its separate character is always upon him who asserts it.'" (quoting *Harkness v. McQueen*, 232 S.W.2d 629, 633 (Tex. Civ. App.–Beaumont 1950, no writ)); *see also Blair v. Blair*, No. 14-97-00832-CV, 1999 WL 649082, at *3-4 (Tex. App.–Houston [14 Dist.] Aug. 26, 1999, no pet.) (not designated for publication) ("the person seeking to rebut the presumption must prove a lack of donative intent by clear and convincing evidence"), and *Kyles*, 832 S.W.2d at 196 (when the presumption that property is one spouse's separate property is triggered by recitals in the deed, the other spouse must come forward with evidence to sufficiently rebut this presumption, and a failure to do so conclusively establishes that such property is the claiming spouse's separate property (citing *Trawick v. Trawick*, 671 S.W.2d 105, 111 (Tex. App.–El Paso 1984, no writ)).

In this context, the effect of the Gift Letter is at best only an evidentiary issue (e.g., parol evidence rule) that, while it may be relevant or even determinative at the summary judgment or trial phase of the case, it does not affect whether the Plaintiff has properly alleged a cause of action.

Similarly, whether the claims bar date, confirmation, and/or the applicable statute of limitations bar Plaintiff from bringing a cause of action against the Debtor for fraud and/or misrepresentation based on those same allegations is irrelevant for purposes of considering whether those allegations may be considered in determining whether the Plaintiff has properly pleaded a cause of action for a declaration that the Home is her separate property because she lacked the requisite donative intent in contributing her separate funds to the purchase price.

Based on the foregoing, therefore, the Court finds that the Trustee's Motion to Dismiss the Complaint with respect to this cause of action should be denied.

<u>REQUEST FOR IMPOSITION OF A CONSTRUCTIVE TRUST</u>

Plaintiff also requests the Court to impose a constructive trust on a portion of the proceeds of the Home. "Under Texas law, a constructive trust is not actually a trust, but rather an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act." ***In re Haber Oil Co., Inc.***, 12 F.3d 426, 436 (5th Cir. 1994)*; see also **Thigpen v. Locke***, 363 S.W.2d 247, 250 (Tex. 1963) ("equity will impose a constructive trust to prevent one who obtains property by fraudulent means from being unjustly enriched"). "The two circumstances that generally justify the imposition of a constructive trust are actual fraud and the breach of a confidential or fiduciary relationship." ***Haber***, 12 F.3d at 436 (citing *inter alia **Meadows v. Bierschwale***, 516 S.W.2d 125, 128 (Tex. 1974)). For this cause of action, the Plaintiff must establish: (1) breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. ***Monnig's Dept. Stores, Inc., et al. v. Azad Oriental Rugs, Inc. (In re Monnig's Dept. Stores, Inc.)***, 929 F.2d 197, 201 (5th Cir. 1991).

In her Motion to Dismiss, the Trustee alleges that the Complaint fails on its face to state this cause of action because the Plaintiff is barred from bringing an action based on breach of fiduciary

relationship or of a special trust, or on fraud, by her failure to file a claim before the bar date and because of confirmation of the Debtor's Plan, and/or by the statute of limitations applicable under state law.[3]  The Trustee's argument that is based on the confirmation of the Debtor's Plan is one of res judicata which, like her other arguments based on the claims bar date and the statutes of limitations, is an affirmative defense.  ***Mowbray v. Cameron County, Tex.***, 274 F.3d 269, 281 (5th Cir. 2001) ("Generally, res judicata is an affirmative defense that must be pleaded, not raised sua sponte."), *cert. denied,* 535 U.S. 1055 (2002); ***Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.***, 677 F.2d 1045, 1050 (5th Cir. 1982) ("[A] complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action."), *cert. denied sub nom.* ***Avondale Shipyards, Inc. v. Kaiser Aluminum & Chemical Sales, Inc.***, 459 U.S. 1105 (5th Cir. 1983).  Dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, if that defense appears on the face of the complaint.  ***EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, N.A.***, 467 F.3d 466, 470 (5th Cir. 2006); *see also* ***Kaiser Aluminum***, 677 F.2d at 1050.

The Trustee argues that the Plaintiff can no longer bring this cause of action based on breach of fiduciary duty or fraud because these are in personam actions that must have been asserted by filing a claim in the Debtor's bankruptcy case on or before the claims bar date.  Because Plaintiff did not file a claim and the Debtor's Chapter 13 Plan has been confirmed, the Trustee contends that the Plaintiff is time-barred by the bar date and bound by the principle of res judicata by the confirmation of the Plan.

Alternatively, the Trustee argues that Plaintiff is barred from bringing this cause of action by the applicable state law statute of limitation.  In particular, she asserts that the Plaintiff must have

---

[3] The Trustee does not challenge in her Motion the second and third of the elements of this cause of action.

brought her action for fraud within four years or for imposition of a constructive trust within two or four years of the February 2001 closing on the purchase of the Home.

The Court takes judicial notice (and the parties do not dispute) that the bar date for filing claims in this case was September 7, 2004.  The Plaintiff did not file any claim in the case.  On March 23, 2005, the Debtor's Amended Chapter 13 Plan (the "Plan") was confirmed.

However, those events–the passing of the bar date and confirmation of the Debtor's Plan– only bar the Plaintiff's claims if she had notice.  *In re Crystal Oil Co.*, 158 F.3d 291, 297 (5th Cir. 1998) ("[T]he debtor must provide actual notice–not notice by publication–to all 'known creditors' in order to achieve a legally effective discharge of their claims." (quoting *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)), and "'known creditors' include both those claimants actually known to the debtor, as well as those whose identities are 'reasonably ascertainable.'"(quoting *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988))).

> The general rule is that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance."

*Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512, 516 (5th Cir. 1994) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted)); *see also, In re Sam*, 894 F.2d 778, 781 (5th Cir. 1990) (also relying on *Mullane*).

No allegation made in the Complaint admits that the Plaintiff had notice.  The Debtor did not list the Plaintiff on his matrix of creditors and parties in interest filed in the case, and nothing else–not the Plan, nor the Section 341 notice that included notice of the claims bar date, confirmation hearing, and other deadlines, nor the confirmation order–reflect service on her.  The Trustee does allege facts in her Motion to Dismiss about what notice was given to the Plaintiff, but those alleged facts are not contained or admitted in the Complaint.  Similarly, there was considerable

discussion at the hearing on what notice the Plaintiff may have had, including statements by Debtor's attorney who is not a party to this suit, but the facts brought out in that discussion are also not included or admitted in the Complaint.  Neither the Trustee nor the Plaintiff have pointed to any evidence in the Complaint or in the record that the Court is allowed to consider on a Rule 12(b)(6) motion that would show the Plaintiff was provided notice of the filing of the case, of the bar date and/or of the confirmation hearing.  No party has offered any support for the Court's bare assumption that, merely because the Debtor and Plaintiff remained married during his bankruptcy case, she had notice of the filing.

The Court is therefore unable to find that the Plaintiff had the requisite notice.  Accordingly, the Trustee's affirmative defenses of res judicata and time-bar by the expiration of the time to file claims do not appear on face of the Complaint or after consideration of those facts which the Court is permitted to consider in ruling on a Rule 12(b)(6) motion.  Thus, the Court finds that insofar as the Plaintiff's constructive trust claim is concerned, the Trustee's Motion to Dismiss on the grounds of res judicata and the claims bar date should be denied.

The Trustee claims that the cause of action for imposition of a constructive trust should be dismissed as barred by the statute of limitations applicable under Texas law.  The Trustee cites *Mowbray v. Avery*, 76 S.W.3d 663, 691 (Tex.App.–Corpus Christi 2002, pet. struck and pet. denied) as support for her argument that the two-year statute of limitations of Texas Civil Practice & Remedies § 16.003[4] or the four-year period of  Texas Civil Practice & Remedies § 16.004(a)(4) and (a)(5),[5] applicable to the underlying claims of fraud or breach of fiduciary duty, apply in this case.

---

[4] Section 16.003 provides that "[a] person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon 2002).

[5] Section 16.004(a)(4) and (a)(5) provide that "[a] person must bring suit on the following actions not later than four years after the day the cause of action accrues: . . . (4) fraud[ ] or

The question of which statute of limitations should be applied to an action seeking the imposition of a constructive trust is not a simple one. *See* Angus S. McSwain, Jr., *"Limitations Statutes and the Constructive Trust in Texas*," 41 Baylor L. Rev. 429 (July 1989) [hereinafter, "Constructive Trust Limitations"] (discussing the various approaches to the question). "Texas courts have clearly adopted the title approach to constructive trusts in land[, under which] emphasis is placed on the idea that the plaintiff is claiming title to this particular land, and the plaintiff's cause of action is therefore treated as one for recovery of land." *Id.* at 436. The statutes of limitations that are usually applied to this cause of action are the adverse possession limitations periods of Texas Civil Practice & Remedies § 16.025, setting a five-year period, or § 16.026, setting a ten-year period.[6] *Id.* at 437.

On the other hand, Texas courts occasionally make an exception for cases where, as in essence is alleged here, a plaintiff is seeking to rescind a transfer of real property, because the defendant in those cases has acquired the plaintiff's property through fraud. *Id.* at 441. In such cases, using the "restitution approach" to determine the applicable statute of limitations, courts have applied the four-year residual statute set forth in Section 16.051 of the Texas Civil Practice & Remedies.[7] *Id.*

---

breach of fiduciary duty." Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004(a)(4) & (5) (Vernon 2002).

[6] Section 16.025(a) provides "[a] person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who: (1) cultivates, uses, or enjoys the property; (2) pays applicable taxes on the property; and (3) claims the property under a duly registered deed." Tex. Civ. Prac. & Rem. Code Ann. § 16.025(a) (Vernon 2002).

Section 16.026(a) provides "[a] person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." Tex. Civ. Prac. & Rem. Code Ann. § 16.026 (Vernon 2002).

[7] Section 16.051 provides "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon

Rather than directly argue that the two-year period does not apply in this case, the Plaintiff responds that the statute of limitations does not begin to run until the Debtor repudiated the trust–i.e., his promise to place her back in the position of owning her own home.  She contends that that did not happen until November 16, 2007, when the Debtor filed his motions to remove her from the Home and sell it.  In support, she cites ***Courseview, Inc. v. Phillips Petroleum Co.***, 158 Tex. 397, 312 S.W.2d 197 (1958).  Alternatively she contends that, even if limitations began to run when the Home was purchased in the Debtor's name and she executed the Gift Letter, limitations has been tolled by 11 U.S.C. § 108.[8]  Finally, the Plaintiff also claims that she may rely on the discovery rule, but that she need not raise that exception to limitations until the Trustee asserts such an affirmative defense in an answer yet to be filed.  The Trustee responds to this argument by asserting that the discovery rule does not apply because only fraudulent concealment of facts will toll the limitations period on a fraud or constructive trust claim, and/or because the deed to the Home was filed of public record and so put Plaintiff on notice of the existence of her claim.

The Court agrees that in general the Trustee's reliance in her Rule 12(b)(6) motion on the affirmative defense of limitations would be premature because she has not yet pled that defense. In the absence of an Answer asserting the defense, the Plaintiff is not required to refute it by alleging facts supporting an exception to it, whether that exception be fraudulent concealment or the discovery rule.  *See **Woods v. William M. Mercer, Inc.**,* 769 S.W.2d 515, 518 (Tex. 1988) (referring interchangeably to fraudulent concealment and the discovery rule and noting that "[a] party seeking to avail itself of the discovery rule must therefore plead the rule, *either* in its original petition *or* in

---

2008).

[8] Section 108(c) provides that, "if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of . . .(1) the end of such period . . . or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim."  11 U.S.C. § 108(c).

an amended or supplemented petition in response to defendant's assertion of the defense as a matter

in avoidance") (emphasis added). To require the Plaintiff, in order to survive a Rule 12(b)(6)

motion, to have alleged facts to respond to an affirmative defense that has never been pled would

be patently unfair. Similarly, the Court should not be forced, at this stage of the proceedings and

based only on a pleading that was filed before the issue was ever raised, to decide such a fact-driven

issue as a matter of law.

The Trustee essentially responds that dismissal on these grounds is nevertheless appropriate

at this point because the Plaintiff is precluded *entirely* from asserting fraudulent concealment and/or

the discovery rule. In particular, the Trustee alleges in the Motion to Dismiss, and the Plaintiff in

her response to this motion does not deny, that the deed transferring the Home to the Debtor, in his

name alone, was filed of public record shortly after the purchase in 2001. The Trustee contends that

any discovery rule or fraudulent concealment argument is therefore barred because the Plaintiff had

constructive notice of the existence of her claim as of that recording.

Both "the discovery rule and fraudulent concealment are available to toll the limitations

period in a constructive trust case." ***Brupbacher v. Raneri***, No. Civ.A. 3:98-CV-1174, 2000 WL

665560, at *4 (N.D. Tex. Mar. 17, 2000). Fraudulent concealment and the discovery rule are two

distinct bases for tolling a statute of limitations, as explained by the Texas Supreme Court:

> Accrual of a cause of action is deferred in two types of cases. In one type, those
> involving allegations of fraud or fraudulent concealment, accrual is deferred because
> a person cannot be permitted to avoid liability for his actions by deceitfully
> concealing wrongdoing until limitations has run. The other type, in which the
> discovery rule applies, comprises those cases in which "the nature of the injury
> incurred is inherently undiscoverable and the evidence of injury is objectively
> verifiable."

***S.V. v. R.V.***, 933 S.W.2d 1, 6 (Tex. 1996) (quoting ***Computer Assocs. Int'l, Inc. v. Altai, Inc.***, 918
S.W.2d 453, 456 (Tex. 1994)); *cf.* ***S & M Representatives, Inc. v. Hrga***, No.
Civ.A.3:96-CV-1863-G, 1998 WL 267945, at *3 n.4 (N.D. Tex. May 15, 1998) ("The doctrine of
fraudulent concealment is, essentially, a fraud specific application of the general discovery rule.").

"Fraudulent concealment does not trump the discovery rule, but is merely a factor to consider in determining when a plaintiff in a fiduciary relationship knew or should have known of the facts giving rise to its cause of action." ***Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc.***, 1 F.3d 374, 377 (5th Cir.1993).

The discovery rule and fraudulent concealment doctrine are both affected by the existence of a fiduciary relationship between the parties. With respect to the discovery rule, the requirement that the injury be "inherently undiscoverable" may be deemed satisfied when there is a fiduciary relationship between the plaintiff and defendant. *See **S.V. v. R.V.***, 933 S.W.2d at 8 (noting that the Texas Supreme Court has "twice held a fiduciary's misconduct to be inherently undiscoverable" because "a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." (citing ***Willis v. Maverick***, 760 S.W.2d 642, 645 (Tex. 1988) (involving attorney and client relationship)) and ***Slay v. Burnett Trust***, 143 Tex. 621, 187 S.W.2d 377, 394 (Tex. 1945) (involving trustee and trust beneficiary relationship)). With respect to fraudulent concealment, limitations will only be tolled until "the time the concealed fraud is discovered or could have been discovered by reasonable diligence[, and a fiduciary] relationship is a circumstance which may be considered in determining whether the fraud might have been discovered through reasonable diligence." ***Powers v. McDaniel***, 785 S.W.2d 915, 918 (Tex. App.– San Antonio 1990, writ denied).

The Plaintiff in this case did raise the issue in her Complaint of whether her relationship with the Debtor should excuse her from being charged with notice of the recorded deed. The "Restatement of Restitution defines a confidential relationship as existing ' . . . where, because of family relationship or otherwise, the transferor is in fact accustomed to be guided by the judgment or advice of the transferee or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor.'" ***Thigpen v. Locke***, 363 S.W.2d 247, 253 (Tex. 1963) (quoting

Restatement of Restitution § 182 cmt. c. (1937)). The Texas Supreme Court has "recognized that confidential relationships may arise not only from the technical fiduciary relationships such as attorney-client, trustee-cestui que trust, partner and partner, etc.–which as a matter of law are relationships of trust and confidence–but may arise informally from 'moral, social, domestic or purely personal' relationships" and their existence "is to be determined from the actualities of the relationship between the persons involved." *Thigpen*, 363 S.W.2d at 253 (citing *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948), *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951), and 54 Am.Jur.2d *Trusts* § 225 (2008)).

Thus, the recording of a deed does not appear to conclusively preclude a discovery rule or fraudulent concealment exception to a statute of limitations defense under Texas law where a plaintiff establishes a fiduciary or confidential relationship between the parties that prevented her from discovering the cause of action. *See generally Powers*, 785 S.W.2d at 918 (where, notwithstanding the recording of the deed in plaintiff's son's name and not in her name, the court examined other facts relevant to fraudulent concealment, including whether plaintiff adequately pled and/or proved a fiduciary relationship with her son); *Gaynier v. Ginsberg*, 715 S.W.2d 749, 756 (Tex. App.–Dallas 1986, writ ref'd n.r.e.) ("[A]s to the fiduciary or fraudfeasor and non-bona fide purchasers under him, we hold that the recording of documents obtained through breach of fiduciary duty or fraud does not, alone, serve as notice to the beneficiary or defrauded person of the breach or fraud.").

The Court finds the Plaintiff's pleading sufficient at this point to refute the Trustee's argument that the recorded deed establishes conclusively that the Plaintiff had notice of her claim at the time it was recorded so that any contention that the statute of limitations should be tolled is barred.

In the alternative, the Court finds that it need not decide whether the discovery rule or fraudulent concealment has been sufficiently pled at this point, because it finds that the Plaintiff need not rely on those exceptions to the Trustee's statute of limitations defense. The Court finds the two-year statute of limitations does not apply to this cause of action.

The Trustee's only authority for the application of a two-year period is *Mowbray*, which was an action based on unjust enrichment for restitution of personal property (insurance proceeds) by imposition of a constructive trust. *See Mowbray v. Avery*, 76 S.W.3d 663, 691 (Tex.App.–Corpus Christi 2002, pet. struck and pet. denied). The *Mowbray* court did not need to, and did not, decide whether a two-year or a four-year limitations period applied. Rather, it merely commented that a two-year period applied to claims for unjust enrichment. *Id.* at 691 n.47 (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998)). The claim challenged on statute of limitation grounds in *HECI* was one to recover personal property (money) from the defendant based on its alleged unjust enrichment. *Id.* Later, the Texas Supreme Court clarified the situation by stating that the statutory basis for the two-year statute of limitations applicable to the unjust enrichment claim in *HECI* and other cases is limited to actions involving personal property and does not apply to those involving real estate. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007).[9] Because the Plaintiff's constructive trust action based on unjust enrichment involves real and not personal property, this Court finds that *HECI*'s and *Mowbray*'s references to a two-year

---

[9] Specifically, citing *HECI* and *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001), the Texas Supreme Court in *Elledge* explained that it had "twice indicated that unjust enrichment claims fall under [Texas Civil Practice & Remedies Code] section 16.003," and stated its rationale as based on "the two-year statute's reference to actions for 'taking or detaining the *personal property* of another.'" *Elledge*, 240 S.W.3d at 870 (emphasis added). In doing so, the Court distinguished the unjust enrichment claims it addressed from those governed by section 16.004(a)(3), declaring that "[t]he most logical reading of sections 16.003 and 16.004 is to treat 'debt' actions under section 16.004 as breach-of-contract actions." *Id.*

statute of limitations period are limited to personal property claims and are therefore distinguishable from this case.

This Court therefore concludes that either the four-year limitations period of Texas Civil Practice & Remedies Code § 16.004(a)(4) or (5), which apply to, respectively, fraud and breach of fiduciary duty, or the five- or ten-year limitations periods of Texas Civil Practice & Remedies Code §§ 16.025(a) and 16.026(a), which apply to real property actions, should govern in this case. Because none of those limitations periods had expired as of the filing of the Debtor's bankruptcy case, the Court also finds that § 108(c) operates to toll the statute of limitations in this case.

Based on the foregoing, the Court finds that the Trustee's Motion to Dismiss the Complaint with respect to the Plaintiff's cause of action for imposition of a constructive trust should be denied in its entirety.

<u>DECLARATORY JUDGMENT OF HOMESTEAD INTEREST<br>AND FOR RECOVERY OF THE VALUE OF THAT INTEREST</u>

Finally, for her third cause of action for a declaratory judgment of her homestead interest and for valuation of that interest, the Plaintiff must show that (1) the property is her homestead, (2) that homestead interest is a real property interest subject to valuation, and (3) the value of that interest.

Preliminarily, one of the Trustee's contentions is the Plaintiff cannot establish a homestead interest in the Home under Texas law because she had lost any "possessory interest" in the Home that she might ever have had by failing to pay the mortgage and by continuing to be unable to pay it. Regardless of the merits of this argument, the Trustee relies on a number of facts not alleged in the Complaint or otherwise able to be considered by the Court on a Rule 12(b)(6) motion to dismiss. The Court therefore rejects this argument without prejudice.

In addition, the Trustee alleges that the Complaint fails on its face to state a cause of action because, first, under the Bankruptcy Code, property of the estate includes all interests of not only the debtor, but also of the debtor's spouse in "community property as of the commencement of the

case that is . . . under the sole, equal or joint management of the debtor." 11 U.S.C. § 541(a)(2). Therefore, the Trustee argues, the Plaintiff must show that the Home was her *separate property* in order for it (and its proceeds) not be to property of this bankruptcy estate.

The Court finds that this argument begs the question in this case, inasmuch as it is a homestead *interest* that the Plaintiff asserts in this cause of action (unlike her first cause of action, discussed above), not a claim that the Home itself is her property–i.e., not an ownership claim to the Home. The Fifth Circuit Court of Appeals, relying on Texas courts' interpretation of a state law homestead interest, recently noted this distinction:

> Under Texas law, "[t]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but [a few] types of constitutionally permitted liens against homesteads. This interest . . . gives protective legal security rather than vested economic rights." ***Heggen v. Pemelton***, 836 S.W.2d 145, 148 (Tex. 1992). Although the Texas Supreme Court referred to the homestead interest as a "legal interest" in ***Heggen***, we must look beyond that label and consider the substance of the right conferred by state law. *See [**United States v.**] **Craft***, 535 U.S. [274, 279 (2002)]. . ..
>
> Unlike a homestead interest, title and equity both constitute vested economic interests in the homestead property . . ..

***In re Rogers***, 513 F.3d 212, 224 (5th Cir. 2008).

Plaintiff's claim to a homestead interest in the Home is thus distinguishable from a claim that she has title to the property or some other ownership interest. Nothing in the Bankruptcy Code–§ 541(a)(2), § 363, § 726, or elsewhere–expressly addresses whether she is entitled to compensation for such an interest in the Home despite its being property of the estate.[10]

Next the Trustee contends that the absence of any provision of the Bankruptcy Code allowing a non-filing spouse to claim an exemption in property of the estate means that the Plaintiff

---

[10] The Plaintiff's claim that she has a homestead interest in the Home for which she is entitled to be compensated is important only if it is assumed (or determined) that she has no ownership interest in the Home–i.e., that it is the Debtor's separate property or community property, and therefore property of the estate. If it is determined to be her separate property it would not be property of the estate subject to the Trustee's right to sell under 11 U.S.C. § 363, and whether or not she also had a homestead interest in the property would not be material.

cannot claim a homestead interest in the Home in this case.  She is bound, the Trustee claims, by the Debtor's choice of exemptions which did not include the Home.

The Plaintiff responds that her interest in the Home is "[u]nder Texas law, . . . an estate in property" that is "similar to a life estate in property." This interest, she argues, is in essence a property interest that cannot (or should not) be unilaterally divested by the Debtor's failure to claim the Home as exempt.  In support she cites only authority for the general proposition that bankruptcy courts look to state law to determine property rights (*Butner v. United States*, 440 U.S. 48 (1979)), and cites Texas case law regarding the nature of the interest she claims in the Home.

The Court finds a case on which the Trustee relies to be on point and persuasive.  *See **H.D. Smith Wholesale Drug Co., Plaintiff v. Michael Ray McCombs, W. Steve Smith, in his capacity as Trustee for Michael Ray McCombs, Alicia Atkinson McCombs, and Internal Revenue Serv.*(**In re McCombs**), Bankruptcy No. 06-35891, Adversary No. 07-3043, 2007 WL 4411909 (Bankr. S.D. Tex. Dec. 17, 2007).  In *McCombs*, the bankruptcy court addressed the claim of a non-filing spouse to a Texas homestead exemption that was in excess of what the Debtor was permitted under the Bankruptcy Code to claim in the property.  The Court, after considering arguments similar to the Plaintiff's here, held that "the [Bankruptcy] Code does not recognize [the non-debtor wife's] claim to a homestead exemption separate and distinct from the Debtor." *Id.* at *8.  This Court agrees and, for the reasons stated in *McCombs* and the cases cited therein, finds that the Plaintiff's claim based on her assertion of a state law homestead interest in the Home should be dismissed under Rule 12(b)(6) as barred as a matter of law by the Bankruptcy Code.

## CONCLUSION

Based on the foregoing, the Court finds that the Trustee's Motion to Dismiss should be granted in part and denied in part.

Specifically, the Court finds that the Trustee's Motion to Dismiss should be denied with respect to the Plaintiff's claims to declare all or a portion of the Home's proceeds as her separate property and to impose a constructive trust on those proceeds.  With respect to the Plaintiff's claim based on her assertion of a state law homestead interest in the Home, the Court finds that the Motion to Dismiss should be granted, and this claim should be dismissed.

A separate order consistent with these findings and conclusions shall be entered contemporaneously herewith.

# # #