**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 05, 2009**

**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **JEFFREY CLARK DOUGLASS,** | § | **CASE NO. 04-12499-CAG** |
| **Debtor.** | § | **Chapter 13** |

| | | |
|---|---|---|
| **DIANA BLEDSOE DOUGLASS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 08-1007** |
| | § | |
| **DEBORAH LANGEHENNIG, Chapter 13** | § | |
| **Trustee, JEFFREY CLARK DOUGLASS,** | § | |
| **AND CHASE MANHATTAN** | § | |
| **MORTGAGE CORPORATION,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION**

This is the decision of the Court after a bench trial held December 11, 2008. This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District and is determined to be a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)(matters concerning administration of the estate) and (O)(determine an interest of the bankruptcy estate). The Court is authorized to enter a final judgment in this proceeding.

Defendant Chapter 13 Trustee's Exhibits 1-27 were admitted without objection, and Plaintiff's Exhibits 1-24 were admitted without objection. Further, during the course of trial, Trustee's Exhibits 28, 29, and 30 were admitted. A number of the exhibits for both Plaintiff and the Chapter 13 Trustee are the same documents. Documents referred to with a "T" and a number are the Trustee's exhibits.

Plaintiff Diana Bledsoe Douglass (hereinafter Plaintiff), Debtor/Defendant Clark Douglass (hereinafter Debtor), and Zia Jackson (a friend of Plaintiff) testified. In reaching its determinations, the Court considered the demeanor and credibility of all witnesses and all exhibits admitted. The Court also considered the oral arguments of counsel and trial briefs.

At issue is whether Plaintiff's payment of $75,000 as a down payment for the purchase of a home at 370 Lone Man Creek, Wimberley, Texas by both Plaintiff Diana Douglass and Debtor/Defendant Clark Douglass was in the form of a gift and thus should be paid to her as her separate property out of the home sales proceeds or whether the home sales proceeds are burdened with a constructive trust or equitable lien in favor of Plaintiff to the extent of $75,000. The Court finds that the $75,000 payment was a gift, and Plaintiff is not entitled to be paid $75,000 out of the sales proceeds. Additionally, Plaintiff does not prevail on either of her alternate claims for relief, in that she is not entitled to benefit from a constructive trust or equitable lien placed upon the sales proceeds to the extent of $75,000. The Court will grant a take nothing judgment against Plaintiff.

The following constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

A number of these facts have been previously adduced in connection with the Court's ruling on the Chapter 13 Trustee's Motion to Dismiss. The following are facts which are agreed or appear from the record of this case:

1. Plaintiff and Debtor married in 1999. Plaintiff owned as separate property a residence in Willis, Texas prior to her marriage to Debtor. The residence had been purchased from the proceeds of a personal injury lawsuit arising from the death of Plaintiff's former husband.

2. On or about October 7, 2000, Debtor and Plaintiff executed a contract to purchase the property at 370 Lone Man Creek for $185,000 (the "Property"). Plaintiff and Debtor leased and lived in the property before they purchased it. They moved into the property in October 2000.

3. Debtor individually applied for financing for the property. In connection with the financing, the lender required a gift letter from Plaintiff to show that Debtor had no payment obligations to Plaintiff for the down payment money she provided.

4. In late December 2000 or early January 2001, Debtor and Plaintiff learned that the seller, Michael Frederick, was in danger of losing the Property through a possible foreclosure.

5. On or about January 10, 2001, Plaintiff paid $75,000 to Mr. Frederick as the down payment on the home. This down payment money lessened the loan amount needed to fund the purchase of the Property. The loan signed by Debtor was in the amount of $129,000.

6. Plaintiff signed two versions of a gift letter. The letters differ only in the amounts reflected on them as being gifted, the first shows $85,000 and is dated January 9, 2001, and the second shows $75,000 and is dated January 12, 2001. The words "will give" instead of "have given" the money are circled on the letters, with this text making sense for the first letter dated January 9, 2001 and being prior to the money being paid on January 10, 2001, but incorrect for the second letter dated January 12, 2001. Obviously the amount of the money changed to decrease by $10,000, thus the likely need for a second letter, and the wording was not changed to exactly match the circumstances.

7. On February 14, 2001, Debtor closed on the purchase of the Property. The underlying note was subsequently transferred to Defendant Chase Manhattan Mortgage Corporation.

8. Prior to Debtor's bankruptcy, in October 2003, Debtor and Plaintiff moved out of the home due to toxic fumes emitted by construction materials used in the house and lived elsewhere without acquiring another permanent residence. In September 2004, Plaintiff and Debtor sued the seller for

damages relating to a diminished value to the house as well as for Plaintiff's health issues caused by exposure to the toxic fumes. They settled for monetary damages sometime in December 2006.

9. On May 4, 2004, Clark Douglass filed for Chapter 13 bankruptcy to prevent a foreclosure of the Property. Plaintiff and Debtor moved back into the Property but continuing marital troubles caused Debtor to later move out.

10. Plaintiff was not scheduled as a creditor in the bankruptcy case. She did not file a proof of claim but she was aware of Debtor's bankruptcy filing, and she attended Debtor's section 341 meeting of creditors.

11. Debtor filed an original and amended plan in this case. Neither version of the plan provided for the sale of the home nor did either plan list Plaintiff as a creditor in the certificate of service.

12. In his schedules filed in June 2004, Debtor did not claim the property as exempt and, therefore, it was property of the estate. Debtor claimed as exempt under 11 U.S.C. § 522(d)(5) any claims, other than personal injury claims, that he might have against the seller of the home. He also claimed as exempt under 11 U.S.C. § 522(d)(11)(D) all personal injury claims he might have against the seller of the home (with this exemption specifically stating that it did not include any personal injury claims of Plaintiff). These exemptions were allowed.

13. The amended plan was confirmed on March 23, 2005. Again, the amended plan did not provide for the sale of the 370 Lone Man Creek Property.

14. On November 16, 2007, Debtor filed a motion to sell the Property to third-party buyers for $222,500, asserting that the bankruptcy estate was the fee simple owner of the Property and that the sales proceeds would pay all allowed claims in the case. The motion asserted that Plaintiff refused to sign the sales contract unless she was assured she would receive her $75,000 and asked the Court to allow the sale to go forward despite Plaintiff's actions. At that point in the bankruptcy case,

November 23, 2007, Plaintiff appeared through counsel by filing a response to the motion to sell. On November 29, 2007, the Court signed an agreed order which approved the sale, obtained Plaintiff's agreement to move from the home, and approved a payment to Plaintiff of $10,000 of the sales proceeds and any excess federal income taxes paid by Plaintiff and Debtor for tax year 2006 to help defray her costs of moving from the house, plus she retained the right to pursue her other claim to sales proceeds. All of the remaining sales proceeds, after the payment of all usual costs of sale, were paid to the Trustee to hold pending the outcome of this litigation. Debtor had also filed a motion to compel Plaintiff to turnover and vacate the Property, and this motion was resolved at the same time by an agreed order with similar terms.

The following facts were adduced at trial.

15. The Court finds that Plaintiff did sign both versions of the gift letters. Although Plaintiff insists that she does not recall signing the gift letters, Plaintiff acknowledged that her signature is on both of the gift letters, and she was the writer who put her address and phone number on these gift letters. The Court finds that Debtor's testimony corroborates what happened in that Plaintiff was required to sign a series of documents in connection with the closing of the Lone Man Creek Property and may have forgotten that she signed the gift letters.

16. The Court does not find credible Plaintiff's recall of the gift letters or of their effect on her money. The Court is not persuaded that Plaintiff did not know what she was doing when she signed the gift letters. This finding is based on her testimony and several documents. First, Plaintiff knew that she was paying $75,000 to save the home from foreclosure because she and Debtor wanted to purchase the home (Tr.-1). Had Plaintiff wanted to specifically exclude the money from being a gift, she could have said so in the addendum to the real estate contract. Second, the gift letters, appearing to be form documents, are titled "gift letters" and their text clearly state that the funds were a bona fide gift from a person not otherwise connected to the sale and who had no expectation for repayment.(Tr. 3 and 4). Third, via letter, the lender informed Debtor on November 10, 2000 that in order to complete the documentation for the loan, the lender needed the "Gift of the down

payment from your wife (sale of her home)." (Tr.-5). Debtor responded by sending via fax to the lender's representative, along with other required documentation, a completed copy of the gift letter. (Tr.-5) On December 29, 2000, the lender sent to Debtor a handwritten list of conditions for closing that included a completed gift letter. (Tr.-6). These documents and/or occurrences show that Plaintiff was aware of the transactions regarding the purchase of the home, and, more importantly, that closing and sale of the home was contingent on Plaintiff's $75,000 used as a down payment and clearly stated as a gift to Debtor.

17. In addition, had Plaintiff wanted to protect her $75,000 contribution to the purchase of the home, there were several instances that should have reminded her or caused her to take action to protect her contribution: (1) her name was not on the warranty deed (Tr.-8); (2) her name was not on the deed of trust (Tr.-10); (3) her name was not on the evidence of property insurance (Tr.-12); (4) her name was not on the owner's title policy (Tr.-13); and (5) her name was not on the 2007 Hays County tax statement (Tr.-15).

18. The Court finds that the evidence and testimony demonstrates that Plaintiff wanted to purchase the Property as much as Debtor. Plaintiff was aware of the need to have a $75,000 down payment in the form of the gift to acquire the home. Plaintiff attended the closing of the sale of the Property to her and Debtor. Plaintiff's desire to keep the home was so strong that she returned to live in the home (rent free) for a period of time even after the home had made her ill. She improved the appearance of the home to ready it for sale and actively supported the sale of the home, at least until she learned that $75,000 of the proceeds were not proposed to be paid to her.

19. All three witnesses testified about the oral arrangement that Plaintiff had with Debtor if their marriage did not work out in that Plaintiff would receive $75,000.00 from the sale proceeds of the home. Plaintiff believed this side arrangement with Debtor protected her. Obviously, neither Debtor or Plaintiff could have predicted the circumstances surrounding the toxicity of the home, the financial strain this situation placed on the parties, in addition to later marital strain caused by other reasons, and Debtor's subsequent need for bankruptcy relief. Nonetheless, their oral agreement to

protect her right to $75,000 runs counter to the express terms of the documentation they provided to the lender which enabled Debtor to obtain a loan secured by the Property. Additionally, Plaintiff's belief she was protected by this side agreement is just that–a belief– because she failed to take binding legal steps to help insure repayment; she failed to file a corrected deed on the property, and after Debtor filed bankruptcy, she did nothing to protect her interest in the home or protect her right to be paid as a creditor. She did not hire an attorney to represent her in the bankruptcy case until about three and a half years into the case. She did not file a claim in the case.

20. The Court finds persuasive that Debtor's attorney, Weldon Ponder, fully explained the repercussions to both Plaintiff and Debtor that by their choosing to exempt the lawsuit related to the toxicity of the house, and not exempting the home, the parties made the difficult choice of seeking financial recourse through the filing of a lawsuit and not the retention of the home. Mr. Ponder explained to Plaintiff and Debtor that because they had not lived in the home for over six months prior to filing bankruptcy and that they could not make the mortgage payment on the home and had not paid the mortgage for many months, they could not claim the home as their principal residence. Further, Mr. Ponder did tell Plaintiff that if the house was sold, the sale proceeds would go Debtor's creditors. Plaintiff and Debtor did receive some financial benefit from choosing to exempt the lawsuit on the home's condition in that they received $12,500 as damages related to defects in the home, and Plaintiff received $7,500 for her bodily injury claim. Additionally, Plaintiff lived in the home rent/mortgage free for about 19 months. Further, it was Plaintiff who wanted the home sold, giving rise to the associated risk that the trustee would contest Plaintiff's assertion of a $75,000 gift.

## Conclusions of Law

The Court will first discuss whether the $75,000 is a gift. The Court finds that Plaintiff's payment of $75,000 for the purchase of the home was a gift. All three elements of meeting the definition of a gift are met.

For a court to find the existence of a gift, there must be proof of donative intent, delivery, and acceptance. "The well-established rule of law regarding gifts is that three elements are necessary to establish the existence of a gift: They are: (1) intent to make a gift; (2) delivery of the property, and

(3) acceptance of the property." ***Grimsley v. Grimsley***, 632 S.W.2d 174, 177 (Tex. Civ. App.--Corpus Christi 1982, no writ) (citing ***M. T. Harrington v. Bailey***, 351 S.W.2d 946 (Tex. Civ. App.--Waco 1961, no writ); ***Sumaruk v. Todd***, 560 S.W.2d 141, 146 (Tex. Civ. App.--Tyler 1977, no writ); *see also* ***Gannon v. Baker***, 830 S.W.2d 706, 710 (Tex. App.--Houston [1 Dist.]1992, writ denied) (same). "One who is claiming the gift has the burden of proof" on all three elements. ***Grimsley***, 632 S.W.2d at 177.

Here, Plaintiff had the donative intent to contribute the $75,000 to enable both she and Debtor to purchase the house. Her testimony showed that she wanted to buy the house. Her overt actions of signing the gift letters and later inaction to safeguard her monetary contribution satisfy the first element of an intent to make a gift.

She delivered the money when she released all dominion and control over the funds. This delivery rule has been stated as follows:

> Among the indispensible conditions of the valid gift ... [is]... the irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no further act of the dominion or control over it. A mere intention to make a gift, however clearly expressed, which has not been carried into effect, amounts to nothing, and enforces no rights in the subject matter of the proposed gift upon the intended donee. The intention must be effective by complete and unconditional delivery.

***Grimsley***, 632 S.W.2d at 177-78 (quoting ***Harmon v. Schmitz***, 39 S.W.2d 587, 589 (Tex. Comm'n App.-1931, holding approved)).

The third element– acceptance of the money– occurred. Mr. Frederick, the seller of the house, accepted the money as part of the purchase transaction, enabling Plaintiff and Debtor to purchase the Lone Man Creek property.

The Court next considers whether parol evidence can be considered to alter the parties' agreement. The Court further finds that the parol evidence rule is applicable and precludes the introduction of any oral evidence contravening the terms of the gift letters.

The parol evidence rule is a rule of substantive contract law. *See* ***Edascio, L.L.C. v. NextiraOne L.L.C.***, 264 S.W.3d 786, 796-797 (Tex. App.--Houston [1 Dist.] 2008, rehearing overruled (Jul 21, 2008), petition for review filed (Sep 04, 2008)); ***Baroid Equip., Inc. v. Odeco Drilling, Inc.***, 184 S.W.3d 1, 13 (Tex. App.--Houston [1st Dist.] 2005, pet. denied); ***City of***

***Pasadena v. Gennedy***, 125 S.W.3d 687, 691 (Tex. App.--Houston [1st Dist.] 2003, pet. denied).

When the parties have concluded a valid, integrated agreement, the parol evidence rule precludes enforcement of a prior or contemporaneous inconsistent agreement. ***David J. Sacks, P.C. v. Haden,*** 266 S.W.3d 447, 451 (Tex. 2008) (citing ***Hubacek v. Ennis State Bank***, 317 S.W.2d 30, 31 (Tex. 1958)); ***DeClaire v. G&B McIntosh Family Ltd. P'ship***, 260 S.W.3d 34, 45 (Tex. App.–Houston [1st Dist.] 2008, rule 53.7 motion (extension of time to file a petition for review) granted)); ***Ledig v. Duke Energy Corp***., 193 S.W.3d 167, 178 (Tex. App.-Houston [1st Dist.] 2006, pet. denied); ***Baroid Equip., Inc.***, 184 S.W.3d at 13.

Parol evidence is only admissible if one of the following situations exist: (1) the execution of a written agreement was procured by fraud, accident, or mistake, (2) an agreement was not to become effective except upon certain conditions or contingencies, or (3) the writing is ambiguous and parol evidence is needed to ascertain the parties' true intentions. ***Litton v. Hanley***, 823 S.W.2d 428, 430 (Tex. App.–Houston [1st Dist.] 1992, no writ); ***Edascio,*** 264 S.W.3d at 796 -797. "To permit parol evidence under the first of these exceptions, there must be a showing that the payee employed some type of trickery, artifice, or device and that the payee induced the maker to execute the note by a promise that he would not be liable for its payment." ***Litton***, 823 S.W.2d at 430. There is no evidence that Debtor obtained Plaintiff's signatures on the gift letters by fraud, nor is there any evidence an accident or mistake occurred when the parties executed the various documents needed to close the loan on the Property.

The second exception– that an agreement was not to become effective except upon certain conditions or contingencies– requires a condition precedent and postpones the effective date of the instrument until the happening of a contingency. ***Id.*** There is no evidence that the use of the gift letters was tied to any happening to occur before the purchase of the Property.

Thus, the only issue remaining is whether the gift letters are ambiguous. The determination of whether the terms of a contract are ambiguous is a question of law. ***David J. Sacks, P.C.***, 266 S.W.3d at 451; ***Tex. Farm Bureau Mut. Ins. Co. v. Sturrock***, 146 S.W.3d 123, 126 (Tex. 2004), ***Seagull Energy E & P, Inc. v. Eland Energy, Inc.***, 207 S.W.3d 342, 345 (Tex. 2006); ***Moon Royalty, LLC v. Boldrick Partners***, 244 S.W.3d 391, 394 (Tex. App.--Eastland 2007, no pet. h.); ***Lawrence Marshall Dealerships v. Meltzer***, 2009 WL 136908, at *3 (Tex. App.--Houston [14th

Dist.] Jan. 20, 2009, no pet. h.). To determine whether a contract is ambiguous, a court must look at the agreement as a whole in light of the circumstances present when the parties entered into the contract. ***Lawrence Marshall Dealerships***, 2009 WL 136908, at *3 (citing ***Sun Oil Co. (Del.) v. Madeley***, 626 S.W.2d 726, 731 (Tex.1981)); ***David J. Sacks, P.C.***, 266 S.W.3d at 451. If a written contract is worded in such a way that it can be given a definite or certain legal meaning, then the contract is not ambiguous. ***Lawrence Marshall Dealerships***, 2009 WL 136908, at *3; ***SAS Inst., Inc. v. Breitenfeld***, 167 S.W.3d 840, 841 (Tex.2005); ***Litton v. Hanley***, 823 S.W.2d at 430. A contract will become ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations. ***Sturrock***, 146 S.W.3d at 126; ***Seagull Energy***, 207 S.W.3d at 345. An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. ***Sturrock***, 146 S.W.3d at 126. "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." ***David J. Sacks, P.C.***, 266 S.W.3d at 450 (Tex. 2008) (citing ***Universal C.I.T. Credit Corp. v. Daniel***, 150 Tex. 513, 243 S.W.2d 154, 157 (1951)); ***Edascio***, 264 S.W.3d at 797 (citing ***Fiess v. State Farm Lloyds***, 202 S.W.3d 744, 747 (Tex. 2006)).

Here, the gift letters could have been better written, but they are obviously some sort of form document used to provide assurance to the lender that the borrower has not borrowed money for the down payment nor received money from a party to the sale to help the sale proceed. The letters were part of the documentation necessary to purchase the Lone Man Creek property. There is no ambiguity in the text of the gift letters sufficient to allow parol evidence of an intent not to make a gift. Thus, the parol evidence rule prohibits the enforcement of any prior or contemporaneous oral agreement of Plaintiff and Debtor that contradict the terms of the gift letters. The letters are legally binding on Plaintiff. Plaintiff made a gift to Debtor of the $75,000.

Plaintiff is not entitled to a declaratory judgment that she has a separate property interest to the extent of $75,000 in the sales proceeds of the house. Plaintiff testified that she understood the house to be community property. As joint management community property, the sales proceeds of that house are subject to the claims of Debtor's creditors in this chapter 13 case. *See* 11 U.S.C. §541(a)(2); ***In re Eisner,*** 2007 WL 2479654, at *6 (Bankr. E.D. Tex. Aug. 28, 2007).

Plaintiff plead alternate claims for relief. First, she requests the court to impose a constructive trust on the sales proceeds of the home to the extent of her separate property used in the home's acquisition. Second, she asks for an equitable lien on the proceeds to reimburse her for the contribution of her separate property to the marital property.

The Court will discuss first whether a constructive trust must be placed on the sales proceeds. "Under Texas law, a constructive trust is not actually a trust, but rather an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act." ***In re Haber Oil Co., Inc.***, 12 F.3d 426, 436 (5th Cir. 1994); ***Thigpen v. Locke***, 363 S.W.2d 247, 250 (Tex. 1963) ("equity will impose a constructive trust to prevent one who obtains property by fraudulent means from being unjustly enriched"). "The two circumstances that generally justify the imposition of a constructive trust are actual fraud and the breach of a confidential or fiduciary relationship." ***Haber***, 12 F.3d at 436 (citing inter alia ***Meadows v. Bierschwale***, 516 S.W.2d 125, 128 (Tex. 1974)). To establish a constructive trust, Plaintiff must establish "(1) breach of a fiduciary relationship or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing of the property to an identifiable res." ***Id.*** at 437 (citing ***Monnig's Dept. Stores, Inc., et al. v. Azad Oriental Rugs, Inc. (In re Monnig's Dept. Stores, Inc.)***, 929 F.2d 197, 201 (5th Cir. 1991) (defining the fiduciary relationship needed as one of "special trust or confidence arising prior to and apart from the transaction in question or actual fraud")).

Actual fraud was not plead or proved here, instead, Plaintiff asserted Debtor owed her a fiduciary duty by virtue of the marital relationship. However, when actual fraud is not involved, the Fifth Circuit has required more than just the failure of a debtor to pay a creditor a debt: "to impress a constructive trust there must be at least a wrongdoing greater than the nonpayment of a monetary debt." ***Monnig's***, 929 F.2d at 203 (citing to ***McKey v. Paradise***, 299 U.S. 119 (1936)). Presented with a debtor department store that had failed to segregate funds it collected from the sale of rugs owned by a licensee, the appellate court reversed the district court's decision which imposed a constructive trust on proceeds collected by the store in favor of the licensee. ***Id.*** Even assuming the license agreement created the requisite fiduciary relationship needed to impose a constructive trust, the appellate court determined that this was merely a situation in which a debtor failed to pay its debts, and there being no evidence of wrongdoing, such a failure could not be treated as a breach of

fiduciary relationship sufficient to impose a constructive trust. ***Id.*** The department store and the licensee were merely in a debtor and creditor relationship. ***Id.***

Plaintiff asserts that Debtor's act to have her sign the gift letters, whether due to malevolent intent or not, breached the parties' relationship of trust or confidence because it caused her separate property to become community property. However, there is no evidence that Debtor forced Plaintiff to sign the letters or that it was his idea. The Trustee's exhibits, specifically Exhibits 5 & 6, show the gift letter was required by the loan officer as a condition to closing the loan. There is no evidence of any wrongdoing or breach of a fiduciary relationship– there is only Debtor's breach of a future promise to repay money to Plaintiff if their marriage did not work. The unexpected intervention of a bankruptcy case and the statutory requirements of how funds are classified and claims are paid has prevented Debtor from repaying Plaintiff. Debtor testified that he would return the down payment to Plaintiff out of the sales proceeds if this action was within his capacity, which it is not. As in ***Monnig***, the parties are merely in a debtor and creditor relationship, and Plaintiff has no right to the imposition of a constructive trust on the sales proceeds

Regarding the imposition of an equitable lien on the sales proceeds, Plaintiff claims a right to a lien in general in her First Amended Complaint. In general, an equitable lien arises "when circumstances indicate that the parties intended specific property to secure payment of a debt." ***RepublicBank, Lubbock, N.A., v. Daves (In re Daves),*** 770 F.2d 1363, 1367 (5th Cir. 1985). The fundamental element necessary to the creation of an equitable lien is the existence of an express or implied contract. ***Id.*** The agreement to create the security interest must be an absolute right to security and not a promise based upon a conditional future event. ***Klech & Co., Ltd. v. Nauru Phosphate Royalties (Honolulu), Inc. (In re RONFIN Series C Bonds Sec. Int'l Lit.),*** 182 F.3d 366, 374-75 (5th Cir. 1999).

Here, the property was purchased in February 2001, the parties filed for divorce in November 2007, thus, seven years after the purchase, Plaintiff seeks to enforce Debtor's oral promise that she can leave with everything she brought to the marriage if the marriage did not work out. This is a promise based upon a conditional future event and is not an absolute right to payment. There are no grounds for an equitable lien.

Additionally, once the debt is extinguished, then any equitable lien also is extinguished.

***Neely v. Herman,*** 2005 WL 5015557, at *5 (E.D. Tex. Nov. 9, 2005). Here, confirmation of the plan and the claims bar date extinguish the debt that Debtor owes Plaintiff. It is true that she was not listed on the matrix of Debtor's creditors, so she did not receive notice of the claims bar date or of the confirmation hearing. However, she testified that she was aware of the bankruptcy filing, she knew Debtor had included the house in his bankruptcy filing, and she attended the meeting of creditors. She did not file a claim in Debtor's bankruptcy case for the $75,000. She did not object to Debtor's plan that valued the house at the lot value, allowed both Debtor and Plaintiff to pursue their personal claims against the seller of the house, and pays unsecured creditors 1% of their claims. The house was ultimately sold, a provision not in the plan, to which Plaintiff objected, and the parties reached an agreement in which Plaintiff received $10,000 in sales proceeds and any excess federal income taxes paid by Plaintiff and Debtor for tax year 2006 to help defray the costs of moving from the house, plus she retained the right to pursue her other claim to sales proceeds. Plaintiff has no right to an equitable lien on the sales proceeds.

In her post-trial brief, Plaintiff makes a statutory claim under Texas Family Code §3.406(a) for an equitable lien based on her economic contribution. This specific claim was not made in the First Amended Complaint, but ignoring whether this claim was tried by consent, this claim is also denied.

The Court will enter an judgment which incorporates these findings of fact and conclusions of law and grants a take nothing judgment against Plaintiff. Debtor's bankruptcy estate does not owe Plaintiff any money. Should the prevailing parties wish to seek attorney's fees, they must do so in accordance with Bankruptcy Local Rule CV-7054.

###